Curia, per

Butler, J.
It appear that the slave Harriet was sold with an understanding that she was not, in all respects, sound. Both the vendors and the purchaser attributed her unsoundness to a different cause than that which existed; and in consequence of that understanding, the slave sold for less than her full value, if she had *403 been entirely free from disease. So that a full price, which usually raises the implication of warranty as to soundness,
was not in fact demanded or given. It is contended that this exclusion of warranty must be limited to the disease that was in the contemplation of the parties, and that in all other respects the implication of law must control the contract.' This is requiring us to extend the doctrine of implied warranty further than it has yet been carried by our decisions on the subject, and is calculated to give a principle sound in its original application, a mischievous operation. The design and tendency of some of our late cases have been to require parties to rely more upon the terms of their own contracts, than upon the general principles of the law. When men make contracts, and have fair opportunities of consulting their own prudence and judgment, there is no reason why they should not abide by them ; leaving the law to afford its relief in cases where injury has resulted from bad faith, wilful deceit, or a clear misunderstanding of the parties.
' If the defendant before the court can be relieved from his bargain, then it would seem to follow that in all cases unsoundness must proceed from the specific cause supposed by the vendor and vendee to produce it at the time ; and that if it arise from any other cause, unknown to either party, the whole contract will be subject to the doctrine of implied warranty. These instances will be put by way of illustration : A negro is sold with a distinct advertisement that he is not sound, but is afflicted with a complaint of the liver, which has given him a cough and reduced his system ; the purchaser, under the dictates of his own judg-mmt, uninfluenced by deceitful representation, gives half price for the property. Subsequently, it is ascertained by professional investigation, or by a post mortem examination. that the liver was sound, and that it was the lungs that were diseased. In such case, should the purchaser be permitted to resort to the liability of the vendor on his general warranty, that all the organs were sound but the liver % If he could obtain relief in the case supposed, I can see no reason why he should not, by showing that not only the liver was diseased as supposed, but that the lungs *404 were also. In one case, a different disease is shown to exist from the one contemplated, and in the other an additional disease is made to appear. And if the principle be carried out, a slave might be sold with an understanding of the vendor, that he was worthless from a number of diseases, whilst an imprudent purchaser, or one skilled in diseases, could maintain an action for the purchase money, by shewing that the slave was free from all such supposed complaints, but was affected with a disease of entirely a different description.
Infinite confusion and perplexity would follow if we were to hold any such doctrine.
The proposition which we would lay down as a general guide, in all cases calling for its application, is this : Where property is sold with an understanding that it is unsound from any cause, and, in consequence of such understanding, it sells for less than it would otherwise have brought, there shall be no general implication of warranty ; and that in all such cases of sale, the vendor shall be held free from liability, unless he has been guilty of deceit, or such false representation as was calculated to suppress inquiry, or lull the suspicions of a reasonable man. This will give to good faith a security from liability, whilst it will throw no protection over the dealings of duplicity and fraud— that is to say, the law will not raise a contract where the party had no good reason to apprehend that one existed. The proposition may appear in a different light, by stating it in a converse form. When a vendor sells property with fair notice of some defect, and which he communicates according to his best judgment, he ought not to be held liable, unless he says or does something going to shew that he expressly warrants the property in all other particulars than that, indicated. In other words, selling with notice of any defect, and for a Jess price than a sound commodity would have brought, shall not raise the implication of warranty so far as it regards other defects not mentioned, and which may have existed without the knowledge of either party. As it regards these latent and unapprehended defects or diseases, they should be covered under an express warranty, or the party making the purchase must be re *405 garded as buying under the doctrine of caveat emptor. This does not affect the general doctrine, that when prop-esty is sold without"qualification and for a full price, the law will raise an implied warranty of soundness. Nor does it affect cases where the vendor sells under the pretext of one objection, when he knows another to exist; or in any case where he suppresses the truth or suggests a falsehood. Such cases must depend on their own circumstances, and can be referred to no definite rule. They cannot fall within the scope of the general contract implied by the law — the very foundations of which rest on good faith and the sound dictates of equal justice. ■
It has been suggested that this case cannot be distinguished from the cases of Venning vs. Gantt, Cheves 87, and Rodrigues vs. Habersham, 1 Sp. 314. It should be remarked, that in both those cases full prices were given for the negroes ; which of itself would go to shew that the purchasers believed they were buying property that was not. affected by that which could be regarded as unsoundness. Besides, the juries may have found their verdicts on the assumption that the purchasers had been deceived by false representations, or such as were calculated to put them off their guard. But in the case under consideration, there was no pretence that the defendant, Boat-wright, had been deceived by any representations of the vendors. He may have been mistaken himself, upon the determination of his own judgment, as to the extent and character of the disease under which the woman labored. He supposed, and that too without such an examination as he might have had made, that she had one disease, whilst she was laboring under another of a different kind, or one in addition to that contemplated. So that he was neither deceived by others, nor did he give a full price for the property. And for aught that I know, the disease of the heart was not altogether disconnected in its cause with the other disorder that had been in the system, and which was assumed to be the primary cause of unsou'ndness.
How far weakness, emaciation, and continued anxiety of mind arising from protracted disease, like that with which the woman was affected, may have affected the heart, I *406 am not prepared to say. And surely if one was the consequence of the other, it must be attributed to it, and must be regarded as constituting a part of the unsoundness that was in the contemplation of the parties, and was therefore excluded from the operation of anything like an implied warranty.
We think the defendant had information enough, given without disguise, to put him on his guard ; and as is said in the cases of Vance and Williams, Dud. 97; Miller vs. Yarborough, ante, p. 48, and other cases referred to in them, he was bound to consult his own judgment, and to abide by all the risks of his contract.
With these views, we are of opinion that the jury have found an erroneous verdict.
Motion granted.
Richardson. O’Neall, Evans and Frost, JJ. concurred.